Case No. 22-1047 Gerald E. Brown Petitioner v. Billy Nolen, Acting Administrator in Federal Aviation Administration. Ms. Candelario for the petitioner and Mr. Stevenson for the respondents. Good morning, Council. Ms. Candelario, please proceed when you're ready. Good morning, Your Honors. My name is Elizabeth Candelario. I'm here on behalf of the petitioner. I'd like to reserve three minutes for my rebuttal, if that's okay. So I'd just like to say the board's reasoning in this case is not supported by substantial evidence and should be debated. We have credibility determinations in this case that are not supported by the actual evidence in the record. The determinations are neither reasonable nor reasonably explained. Therefore, they don't constitute substantial evidence to support the findings. But even if you were to accept that both Captain Moon and Mr. Zimmer are credible witnesses, the board's findings are nonetheless unsupported by substantial evidence and unreasonable. Because looking at substantial evidence, it's more than just the basis of the evidence that justifies the agency's decision. You should also take into account whatever the record detracts from it. So when you look at what was actually said, substantial evidence doesn't exist with any of these violations. So starting with 91.105, the requirements remain at a crew member station unless the absence is necessary. The logic found that Mr. Brown left the cockpit without any communication to the other crew members and without transfer of control via UPS procedures. And then the board upheld it because Mr. Brown admitted that he left the cockpit and then he left abruptly without following standard procedures. But these conclusions are unsupported because if you look at the testimony from all three parties, it's normal and appropriate for each of the crew members to go to the back and get comfortable at the start of the flight. So there's no basis to find a violation simply because Mr. Brown left the cockpit. Can I ask you, Ms. Canelario? You argue that the FAA never actually established what the procedures are for transferring control. Do you dispute that the bare minimum is that there should be some recognition or acquiescence by the person who's expected to take over? So if Mr. Brown is leaving and he says, you know, even if it's something as simple as, you know, got this summer or got this moon or, you know, whatever, do you dispute that there is at a bare minimum such a requirement of an acquiescence or response? To be honest, your honor, I don't know what the bare minimum requirement is because it hasn't been established. I don't think it's been shown that there's a certain procedure or a certain wording that's used. But I think it has been shown that Mr. Brown did make a statement to notify them that he was leaving. Even Captain Moon said that Mr. Brown said, I've had enough of this, I'm out of here. And then, you know, he described the whole seat exchange with Mr. Zimmer and the law judge found, as a finding of fact, that Mr. Zimmer immediately assumed control of the first officer's duty station and took control of the aircraft. Is there anything from, as you read the record, from which the board could have found that Mr. Brown received some acquiescence or recognition of the request to take over? I mean, I think the fact that Mr. Zimmer immediately took the seat shows that he acquiesced. I don't recall if there was any specific words said by Mr. Zimmer or if that was brought out in the record. Just the fact that Mr. Brown said, I'm leaving, whether he said, you've got this or I'm out of here. And then he switched seats with Mr. Zimmer and Mr. Zimmer took control. And then there was also the testimony that the plane was on autopilot. So there was never any kind of safety risk at that point in time with the switch. So when you look at the evidence, the lack of any procedure that wasn't followed and the fact that everybody testified it was normal. Mr. Zimmer had already gone to the back. It was Mr. Brown's turn to go to the back. That violation just hasn't been proven by the FAA. And there's not substantial evidence to support the board's finding. And then we look at 121.580, where it says you cannot assault, threaten, intimidate or interfere with a crew member in the performance of their duties aboard an aircraft. The FAA with that one alleged both that Mr. Brown threatened and that Mr. Brown interfered. Those were the specific allegations. So when you get the interference allegation, the board found, or I'm sorry, the LAJO found and the board affirmed that Mr. Brown's conduct interfered with the captain's duties and caused him to miss a radio call. He said it was during the heated confrontation by Mr. Brown directed at the captain. And this is just, once again, unsupported by the evidence that's in the record. But, you know, the board and LAJO said that Mr. Zimmer was credible. And his testimony was that they, referring to Captain Moon and Mr. Brown, were talking about the takeoff. And so they missed a radio call. Similarly, in his incident report that he submitted, Mr. Zimmer said they were still discussing takeoff. He says that Moon told Brown he just wanted him to acknowledge or apologize for the takeoff performance. And that's when ATC issued a radio call that they both missed. So it's undisputed that Captain Moon initiated the conversation. And then he continued the conversation. And pursuant to Mr. Zimmer, he was talking about wanting Mr. Brown to acknowledge and apologize for the error at the time of the missed radio call. You say in your brief that the complaint did not allege intimidation or, quote, conduct, close quote, that threatened the captain. That the decision seems inappropriately to broaden the FAA's allegation. Can you say what you more what you mean by that? Sure. So the specific allegation that the FAA made was that Mr. Brown threatens the captain when he said that he would take matters outside the bar and handle them. So the specific allegation was that he made this statement and this statement was a threat. The law judge and the board's decision to talk about threatening conduct and intimidation, which just wasn't what was alleged by the FAA in its complaint. But even when you're looking at, you know, alleged threatening conduct and intimidation, there's really not any any evidence of that either. I mean, all three witnesses testified that Mr. Brown stayed seated during the exchange. Captain Moon admitted and specifically said, you know, Mr. Brown didn't raise a fist. He didn't make any physical movement with his body or his shoulders or his arms to give any indication of physical violence. So and they also claim to rely on testimony from Mr. Zimmer about facial expressions and body language, which doesn't exist. Mr. Zimmer said that Mr. Brown just kind of said it when he made the statement about whatever the statement was about the bar and that Mr. Zimmer could not see facial expressions. So that just I can't support the board's reasoning that Mr. Zimmer said the conduct was intimidating and Mr. Zimmer did not ever give that testimony. There was also, you know, because it comes down to the FAA's allegation that, you know, these specific words were a threat, but there's not actually a finding as to what exactly was said. And I think this is a crucial flaw because there's a really big difference and a slight difference of phrase. It's Captain Moon testified using the phrase back at the bar refers to a debrief after a flight. So that's what Mr. Brown claims he said and what he meant. But even if you look at what Mr. Moon claimed was said, which was you talk to me that way again and you and I are going to meet outside the bar. That's, first of all, not what the law judge stated as what was said. So I'm not sure where the language exactly comes from. It wasn't the exact language Mr. Moon used. It was a little bit more similar to Mr. Zimmer statement, which he claimed it was something like if Moon continues to talk to him that way again, Mr. Brown would take matters out back behind the bar and handle them. And then Mr. Brown, slightly different, but with a very different meaning, claimed he said, if you want to keep talking about this, let's do this outside the cockpit back at the bar. I'm not here. So we have outside the bar back behind the bar behind the bar or back at the bar. And it was not really an explicit finding as to what exact phrasing was used. So to the extent that the law judge doesn't matter, I mean, they're all roughly around the same thing. Yeah, well, it's Captain Moon, your honor, using the phrase to say, let's talk about something back at the bar means it's common term to use to say, let's talk about this in a debrief after the flight. So if that's what Mr. Brown said, that's in no way threatening. And I think Captain Moon even acknowledged that, that to use that phrase would just mean let's talk about this later. There's nothing threatening about that. And there wasn't really a specific finding as to the terminology that was used in the phrase. It's a little bit like a question about the speed at which the aircraft was traveling when it was, you know, when when Brown. Did the liftoff rotation in the sense that I think the record does support the notion that Moon and Zimmer perceived it to be early. And I also do you think the record doesn't support the determination that Moon and Zimmer perceived Brown to be saying behind the bar, not let's go, you know, let's go chat about this over a drink at a later time. But, you know, I mean, I think it's important that Captain Moon certainly felt that way. I think Mr. Zimmer specifically said that, you know, nothing was said to him. So he couldn't speak to whether or not it was was a threat or, you know, what the words meant. But he he said Captain Moon felt threatened. But I don't think that Captain Moon's feelings are sufficient to establish that Mr. Brown made a threat. There has to be some level of objective reasonableness in his feelings. In order to hold Mr. Brown accountable for that. But even if you say that, you know, except that Mr. Brown may have said exactly what Mr. Moon claimed, which was you talking that way again and you and I are going to meet outside the bar. It's it doesn't really make any sense in the context because there is no bar on the plane. So what he's claiming Mr. Brown said is, you know, let's wait until we land and we leave plane and then we're going to go find a bar and fight about it. There's nothing to support the judge's conclusion that it was an imminent threat. When you couple that with the fact that Mr. Brown didn't make any physically overt motions, didn't move as if he was going to hit him. Instead, he turned around and walked away. He left the cockpit. So under whatever language he used, he made it clear that we're going to resolve this after the after the flight, whether it was a literal bar or just in a debrief. We're going to talk about this later. I'm leaving. And he left the cockpit. So there's just not evidence to support the finding that those words alone were a threat in any way that was going to endanger the safety of the flight or that was being issued against the captain in the performance of his duties on the aircraft. We are lighting can be confusing, but I think you're in your rebuttal time, but we will give you we will give you a little bit of rebuttal time. Let me make sure my colleagues have further questions for you. Thank you, Ms. Candelaria. Mr. Stevenson, hear from you now. Thank you, Your Honor. May it please the court. Mr. Stevenson, on behalf of the Federal Aviation Administration and its administrator. I think it's important to remember that everything that we are talking about in this space is occurring in the cockpit of an aircraft of a United Parcels Service MD-11 as it is ascending above 18,000 feet. This is a small enclosed space where space is tight. Safety is important. And the captain of the aircraft, the pilot in command of the aircraft, Captain Boone, chose to initiate a safety related conversation with one of his fellow crew members after 18,000 feet. So the sterile cockpit rule did not apply at that point and actually permitted such a conversation. The petitioner here, Brown, did not respond well to this attempted discussion of the issues that occurred during the takeoff. The consistent testimony of both Captain Boone and the International Relief Officer Sven Zimmer was that Mr. Brown did not take it well. That this conversation stretched on, that he became angry, that his tone became elevated, that it became confrontational, that a radio call was missed. And then shortly after that point in time is when Mr. Brown makes this statement about how they should take this out, but behind the ball. And the International Relief Officer Zimmer, he described that his perception of that was a suggestion that those two, Brown and Boone, would need to duke it out, that they would need to have a fight to resolve this. Captain Boone, who was next to Mr. Brown, so Zimmer is, as he testifies, is behind Mr. Brown. He's not able to see his face, although he can hear the tone of his voice. Captain Boone, who was able to look Mr. Brown in the face, testified that he was afraid that Brown was just going to punch him right there in the cockpit. And then Brown gets up, he says, screw this, or words to that effect, and he leaves the cockpit. And at that point in time, when he leaves the cockpit, he is the blind pilot. That means that he is the person who is responsible for the controls. I acknowledge that the autopilot was turned on, but there is a reason why we don't just turn on autopilots and then not worry about whether or not there's a crew on the aircraft. Aviation is going to be very unforgiving of mistakes and does not give you a lot of time to respond. And that's why it's important that there is always one person, and everybody knows who that one person is, who has the controls. So if something goes wrong, that person is the one who's going to be grabbing the wheel and taking whatever the appropriate action is. And there's always a second person in the cockpit. Wouldn't Moon, by default, be the person having the controls if, let's say, Zimmer were ill in the back? So there are two sets of controls there. Captain Moon was sitting at the other one. So, I mean, we can speculate that had something happened after Mr. Brown left the seat and before Zimmer moved into that seat, that Captain Moon would have attempted. I mean, he flies into the engine and the plane isn't operating properly. Yes, right. Captain Moon is not going to sit there and be like, well, I'm not the assigned flying pilot, so I'm not going to do anything. But, you know, we have a regulation that says that you can't just leave that duty station. And there is a, you know, if you're the flying pilot and you want to get out, you need to make sure that someone else is the flying pilot before you do that. And that's where the whole positive transfer of control thing is. You need to make it clear to someone else and the rest of the crew that you want to transfer the controls and you need that verification back from them. What's the best authority for your statement that you need that verification back? Is there some dispute about whether this is anywhere in the record? Both Captain Moon and Zimmer testified about that. I mean, they talked about what the ideal transfer of control would be. We talked about altitude and heading, but they also both specifically said that you had to have, you know, words along the lines of, you know, you've got the controls. Yes, I've got the controls or the wheel or the stick or the yoke, you know, depending on what the terminology is. I mean, obviously, we don't have a regulation that specifies some precise terminology there. And that's like Zimmer's testimony about that in particular is in the joint appendix at page 126, I believe. So at that point in time, right, this is Brown gets up and he leaves the cockpit. And especially if you look at Zimmer's testimony, as you can see, at this point, he is angry. He comes across to the other people in the cockpit as emotionally unstable. Zimmer? Of course, Mr. Brown comes across as emotionally unstable. But especially if you, I think that the testimony of Mr. Zimmer is particularly illustrative on this. When you see what they do and what they talk about, they being Zimmer and Moon, when Mr. Brown leaves the cockpit, right? It's not like he leaves the cockpit and then they're just, okay, well, he's not here anymore, so we're not worried about it. They don't know what's going to happen next.  We know that thankfully nothing else happened on the flight. There were no more incidents, but they didn't know that at the time. They were aware of some personal things that were going on with Mr. Brown. They were aware of other situations in the past where something worse had happened. You know, Moon takes the step of hiding the crash axe that's in the aircraft. Moon and Zimmer, yes. Let me ask you, this is just sort of testing the record and the limits of your position. If it were the case that Moon is just somehow for other reasons has a grudge against Brown and really doesn't care for him, doesn't think that he's, thinks he's a bit of a loose cannon, but really doesn't have a reason and just overreacts, overreacts here. If this is overreaction, then we see Zimmer, who is very aware of the hierarchy and, you know, reacting appropriately within that. And therefore says, you know, it's clear Moon seemed to feel threatened. And a lot of his descriptions are in relation to what he thinks Moon is experiencing. And, you know, if it were the case that it's really just blown out of proportion by Moon, what in the record in your view just shows that that's just not at all what was going on here? In other words, in response to Ms. Candelario's position that his, his, he may have felt threatened, but it wasn't reasonable under the circumstances. Sure. If we want to just, if we want to set aside what Captain Moon said and just look at what Mr. Zimmer said, opposing counsel is correct in that frequently Zimmer talks about how Moon was feeling threatened. But Zimmer also specifically talks about it as a threatening situation. And indeed, Zimmer, the point in time where he knows that I didn't feel threatened by the threat to, you know, to have a fight because that wasn't directed at me. But then when Brown gets up and marches out of the cockpit, at that point, you really start to see Zimmer starts specifically talking about how he feels threatened at that point, because that's the point where they, you know, that he's observed this, you know, that he's heard the tone of voice. He's observed what he sees to be emotional instability on the part of Mr. Brown. And again, they don't know what is going to happen next. Moon and Zimmer. And this is Zimmer's testimony is that Moon and Zimmer talked about, for example, whether or not to just turn the aircraft around and land back in Sydney. And one of the at least part of the reason why they didn't do that is because they didn't know what Mr. Brown would do. He would immediately know that the aircraft was descending. He would immediately know that. And he would immediately know that there was going to be problems for him when the aircraft landed on the ground. And he didn't know what he was going to do. A couple of times you refer to to Zimmer. As as of Zimmer testified that he thought Brown was emotionally unstable. I didn't see that terminology in the record. Where is the the evidence that you think most squarely presents that observation or that kind of observation? Zimmer's part. I would suggest looking in the joint appendix from around pages 147 through 151. This is there's some it's partial testimony. Some of it was objected to. So but there is there's testimony about having had a conversation with Mr. Brown. The implication is that perhaps Mr. Brown was having some was going through a divorce and losing his kids and losing his house. And that Mr. Zimmer had previously discussed that with Mr. Brown. Which was all excluded from the record. Well, some of the questions were objected to and there were not answers. Some of it was included. So I would not be able to point out precisely which phrases were excluded or not. But that there is some testimony about that in the record. And that that's that forms part of the basis for Zimmer's concern about further escalation. I see that I am in the red. So I will, of course, answer any additional questions. If your honors have any questions, I don't know if they still teach this in law school. But I remember in torts we were told if if someone said, if I were 20 years younger, I'd flat you that that was still an assault. It may have been a conditional assault, but it was assault. And it certainly wasn't thousands of feet up in the air. I don't see how this is anything but a threat and assault. Yeah, I wouldn't know one, a conditional one. Yes, I would. And the regulation in question one, twenty one, five, eighty does also prohibit assault because it separately prohibits it because it references both threats and assaults. We usually speak of it in terms of threats if there was not physical contact. But certainly the regulation also prohibits assaults. And I would agree with your honor that the even the conditional statement that I am going to physically assault you late, I'm going to take a physical action against you later. It does violate the regulation. Can I just ask one factual question? I'm not suggesting that this is at the center of the case, but since I have an FAA lawyer before me, I'll just ask it. I guess I was surprised that the flight recorders work. I know there's two different types. I was surprised that they work such that they can only capture the last 30 minutes. Is that just is there a. Technological cap or why is that? Why doesn't why aren't there recorders that just capture the entire flight? That is a. There's a combination of technology and regulations. I mean, it would be possible to technologically install a larger recorder. The regulations, depending on when the aircraft was manufactured or updated, there's a requirement for at least what the. The cockpit voice recorder has to include the record in this case does not say specifically what the time was at 30 minutes or was it 60 minutes? But but yes, your honor, the the cockpit voice recorder in this aircraft, we know, had some limited amount of storage capacity. And if you don't disable the cockpit voice recorder, then it just automatically goes and writes over in order to ensure that if the aircraft crashes, there's something for the NTSB and the FAA to find and try to figure out. All right. I just had one question. Mr. Brown says that the Vissar's investigation was procedurally flawed and cites to FAA guidance that he says instructs that investigative personnel interview all witnesses with information about an apparent violation, including normally the apparent violator. And yet, Mr. Vissar did not do that here. Why is that appropriate? Why didn't he? Well, in this particular case, and I do not go into detail on this, but I know that this is in the joint appendix at. I think 198 to 200, you can see there were statements that already been made by by Captain Brown and by Mr. Zimmer and I might I apologize. Let me that is. I'm sorry, that's that's 298 to 300. My apologies. And so those are statements that those two individuals made immediately after the flight to UPS. So inspector so that the FAA inspector, when he first had this case already had those statements in the normal course of investigation, this case was not issued as an emergency in the normal course of investigation. A letter of investigation is sent to the subject of the investigation. He does not happen. He doesn't have to come and talk to us. We don't we don't compel people. We don't hold it against them. But also because this was issued as a notice, there was the opportunity for Mr. Brown to have an informal conference, which is for him to come in and talk with the FAA after the issuance of a notice to perform an order. And then what's the authority for that that he could have come in and had an informal conference there in in the early part of part 13? I, I apologize. I don't remember the exact citation. It's within the 13.14, 15, 17 range that it references what people's options are responding to a notice of proposed certificate. But even if there was something, there had been something deficient in the investigation, even if there was some FAA policy, which is not that the investigator is required to go talk to every single possible witness. That does not change whether or not there was substantial evidence to support the NTSB's finding, because by the time the administrative law judge and the NTSB are making their decisions, everyone has been heard. It's not just false statements. Mr. Brown testified there was the opportunity for cross-examination. Mr. Zimmer testified and there was the opportunity for cross-examination. And, of course, I'm sorry, Captain Moon testified that there was opportunity for cross-examination. And, of course, Mr. Brown got to testify on his own behalf. And so the judge had the opportunity to hear everything that Mr. Brown wanted to say, even if Mr. Brown feels like the FAA made more of an effort to talk to him prior to issuing the order. Thank you, Counselor. Let me make sure my colleagues don't have additional questions for you. Thank you. Thank you. Ms. Candelari, we'll give you two minutes for rebuttal. Thank you. A few things I'd like to point out when you were talking about the leaving the cockpit and assuming control and, you know, the testimonies that were given by Moon and Zimmer about what has to be done. And the specific testimony that was cited to on page 126 of the joint appendix where Mr. Zimmer said you have the controls and then someone else would acknowledge I have the controls. I mean, nothing more there was established other than that there needs to be some kind of acknowledgement that the one person is leaving and the other person is taking over. And I just that was done here. Nothing has been proven that was specifically needed to be said. It's more of a formality that he just he didn't follow a formal procedure, but there was no formal procedure. When talking about, you know, what makes the conclusion reasonable that Mr. Moon may have issued a threat and there was talk about Zimmer saying it was a threatening situation and, you know, what was discussed once Mr. Brown left the cockpit. But Mr. Zimmer never said that the statement was a threat and that he saw Mr. Brown as a threat other than when he was talking about takeoff, which, you know, wasn't alleged in the complaint. The logic said that wasn't reasonable to Mr. Zimmer's concern about Mr. Brown having been a threat because of his unsafe takeout takeoff isn't isn't relevant to the threat that was alleged here. And as far as what he was concerned about, Mr. Zimmer's testimony consistently shows that he was concerned because Captain Moon and Mr. Brown weren't getting along. It wasn't about Mr. Brown's behavior. And then they go on to talk about the other incidents that have happened. And I think you need to contend with where Zimmer observes that Brown, as I think he said, went from zero to 100. And he said, you know, in a matter of seconds and in my head, I was going, whoa, that's a quick elevation. What would be the next level? And I don't think he's talking about the elevation of the plane. I think he's talking about the escalation emotionally. He says he went from zero to 100 for a legit question, meaning Moon's question to him. And and so he said he could have said, oh, my bad, you know, whatever. But it was more the fact that he didn't even have a conversation and to Zimmer's observation seemed really angry that that that that's it is an observation of something that made it seem like Brown was just in rake. Yeah, well, a couple of points in response to that, your honor, is that that's also kind of contrary to Zimmer's other statement that this whole conversation lasted two to three minutes. And then it was a back and forth and that the voices weren't elevated until the very end. So he kind of completes the beginning and the end of the conversation and suddenly says it was, you know, in a matter of seconds when he had previously testified that the conversation started. And it was like two to three minutes later that Mr. Brown or Captain Moon became elevated. And then this was also. In response to being questioned about, you know, what were your concerns that justify you and Captain Moon deciding to violate the regulations. So it's also put in a slightly different light because he's responding to defending his actions. You know, they they indisputably did not take the required rest periods because they have to decide to keep Mr. Brown out of the cockpit. So he's kind of defending that action here and and pointing out that, yes, Mr. Brown became elevated. But even if you accept that, I'm sorry, that's also where the takeoff performance comes into play, because basically Moon and Zimmer have both said that, you know, Mr. Brown should have just said, oh, yeah, you're right. I made a mistake. I'm sorry. And this would have all gone away. So Mr. Brown's being faulted for something that he has maintained that he didn't do. And then he attempted to present expert testimony on to prove that didn't that he didn't do. So I would say his defensiveness was was reasonable. He's being accused of a serious safety violation when he knows there was nothing unsafe about his takeoff. So he he refused to concede and he later admitted that, you know, he shouldn't have told Captain Moon what to do or that he was wrong. But he also wasn't going to admit to a safety violation that did not occur at that time. And I'm sorry, I'm out of time, but let me make sure my colleagues have additional questions for you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Pillard